IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEPHANIE MANZANARES        :

                               :

    v.                         : Civil Action No. DKC 21-2241

                               :

PRUDENT MEDICAL ASSOCIATES, LLC

                               :

**MEMORANDUM OPINION**

Pending and ready for resolution in this employment-related retaliation case is the motion for summary judgment filed by Defendant Prudent Medical Associates, LLC ("Prudent"). (ECF No. 24). The issues have been briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

**I.   Background**

In February 2019, Plaintiff Stephanie Manzanares was fired from her job at Quality First Urgent Care ("Quality First"). (ECF No. 29-1, at 1). Plaintiff claims that she was subject to discrimination by her supervisor at Quality First, Dr. Syma Rizvi. (ECF No. 24-3, at 25). After being fired, Plaintiff filed a charge with the Equal Employment Opportunities Commission ("EEOC") against Quality First. (ECF No. 29-1, at 1).

In March 2019, Defendant Prudent offered Plaintiff a job as a "Nursing and Administrative Assistant." (ECF No. 24-3, at 10).

Plaintiff obtained this offer in part because of a recommendation from her friend, Niri Almeida, who worked for Prudent and had previously worked under Syma Rizvi at Quality First.  (ECF Nos. 24-3, at 26-27; 29-1, at 1).  Plaintiff began working for Prudent on March 4, 2019.  (ECF Nos. 24-3, at 10; 29-1, at 1).  Plaintiff's supervisor at Prudent was Dr. Deborah Okonofua.  (ECF Nos. 24-3, at 10; 29-1, at 1).  While in this role, Plaintiff used the name "Stephanie Pellot."  (ECF Nos. 24-2, at 1-2; 24-3, at 10). According to her offer letter, Prudent offered Plaintiff the job "on a probationary basis for the first 90 days," after which the position could be "confirmed permanent" "based on [a] performance evaluation." (ECF No. 24-3, at 10).  The offer was also contingent on a satisfactory reference check.  (ECF No. 24-3, at 10).

By the end of March 2019, Plaintiff's employment with Prudent ended.  The parties, however, provide differing explanations for how and why this happened.  For her part, Plaintiff has offered three separate accounts of the firing over the course of this litigation.  First, in her unverified amended complaint, Plaintiff alleged that Dr. Okonofua fired Plaintiff on March 25, 2019, and explained that Plaintiff was fired because Syma Rizvi had told Dr. Okonofua that Plaintiff "was participating in the complaint process with the EEOC." (ECF No. 7, at 2-3).

Second, during discovery, Plaintiff responded to an interrogatory which asked her to "state all facts that support

[her] allegation . . . that Syma Rizvi called Dr. Okonofua and informed her . . . [about the EEOC charge]." (ECF No. 24-3, at 26). Plaintiff stated:

> On or about March 22 or 26[,] [Dr.] Okonofua called both Plaintiff and Niri Almeida into her office to state that she . . . had every right to reach out to Quality First for a reference and that she spoke with Syma Rizvi. [Dr.] Okonofua stated that [Syma] Rizvi gave Plaintiff and Almeida a bad reference.

(ECF No. 24-3, at 26).

Third, Plaintiff submitted an affidavit in which she stated:

> In late March 2019[,] I spoke with Dr. Okonofua regarding time off so that I could attend a therapy session. [Dr.] Okonofua rejected my request. She told me that she had spoken with my former employer and supervisor, Syma Rizvi. She said that [Dr.] Rizvi had told her something that made her regret hiring me and that if she had known it before she would not have hired me. She also said I should get my mental health checked and there was no need for me to come into work anymore, terminating my employment.

(ECF No. 29-1, at 1).

Prudent, on the other hand, asserts that it never fired Plaintiff at all. (ECF No. 24, at 6-7). Instead, Dr. Okonofua stated in her affidavit that she "received complaints that Niri Almeida and Plaintiff spent valuable work hours engaging in activities unrelated to their duties often resulting in uncompleted tasks." (ECF No. 24-2, at 2). To remedy this purported issue, Dr. Okonofua altered Plaintiff's schedule so that

she would no longer work the same shift as Ms. Almeida. (ECF No. 24-2, at 2). After Dr. Okonofua told Plaintiff about this shift change, Plaintiff purportedly stopped coming to work and ceased communicating with office staff. (ECF No. 24-2, at 2). Dr. Okonofua stated that she "did not have any information" about Plaintiff's prior employers because Plaintiff failed to submit a "completed Employee Hiring Package" which would have disclosed this information. (ECF No. 24-2, at 2-3). Dr. Okonofua also stated that she does not know Syma Rizvi, that she "did not contact" Syma Rizvi, and that she "did not know that . . . [Plaintiff] filed an EEOC complaint . . . against her former employer" at any time before Plaintiff purportedly stopped coming to work. (ECF No. 24-2, at 3).

In the days preceding the end of Plaintiff's employment, she exchanged several texts with Dr. Okonofua. (*See* ECF Nos. 24-3, at 11-13, 30-33; 29-2, at 1-4). On March 20, 2019, Dr. Okonofua sent a long text in which she instructed Plaintiff to stop working hours that had not been specifically approved. (ECF No. 24-3, at 11-12). In the same text, she also told Plaintiff, "I did not get your paperwork," and "[y]our check cannot be processed [without] it." (ECF No. 24-3, at 11). In response, Plaintiff apologized, promised to submit the needed paperwork, and stated that she wanted to "help and be a great asset." (ECF No. 29-2, at 2). On March 27, 2019—two days after Dr. Okonofua says Plaintiff stopped showing

4

up to work and around the time that Plaintiff says she was fired—
Dr. Okonofua sent Plaintiff a text in which she said, "I have not
heard from you.  Making sure you are okay."  (ECF No. 24-3, at
30).   Plaintiff  did  not  respond.   (ECF  No.  24-3,  at  31).
Additionally, Plaintiff at some point exchanged texts with a former
co-worker named Andrea.  (ECF No. 24-3, at 2).  In these undated
texts,  Plaintiff  stated  that  Syma  Rizvi  had  been  giving  "bad
references"  and  that  unnamed  prospective  employers  apparently
wanted to hire Plaintiff "until they g[o]t the references."  (ECF
No. 24-3, at 2).

On March 24, 2021, Plaintiff sued Prudent in the Circuit Court
for Montgomery County.  (ECF Nos. 1, at 1; 3, at 7).   Prudent
removed the case to this court on August 31, 2021.  (ECF No. 1).
Plaintiff later filed an amended complaint asserting a retaliation
claim under 42 U.S.C. § 1981 of the Civil Rights Act of 1866.  (ECF
No. 7).  Prudent moved to dismiss the amended complaint, and the
court denied that motion.  (ECF Nos. 8, 12, 13).  After discovery,
Prudent  filed  a  motion  for  summary  judgment,  (ECF  No.  24),
Plaintiff responded, (ECF No. 29), and Prudent replied, (ECF No.
30).

## II.  Standard of Review

A court may grant summary judgment if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)) (alteration in original).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  However, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

A plaintiff who has raised a § 1981 retaliation claim may defeat a motion for summary judgment "either through direct evidence of retaliatory animus" or "via the application of the . . . burden-shifting framework" established in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973). *See Roberts v. Glenn Indus.*
*Grp.*, Inc., 998 F.3d 111, 122 (4th Cir. 2021) (Title VII summary
judgment); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208,
216-17 (4th Cir. 2016) (applying *McDonnel Douglas* to § 1981
retaliation claim and explaining that the same framework applies
to retaliation claims under both Title VII and § 1981). Plaintiff
has chosen to proceed under the *McDonnell Douglas* framework. (ECF
No. 29, at 2).

To prevail under this framework, Plaintiff must first
establish a *prima facie* retaliation case by producing evidence
from which a reasonable factfinder could conclude that: (1)
Plaintiff "engaged in protected activity," (2) Defendant "took an
adverse action" against Plaintiff, and (3) "a causal relationship
existed between the protected activity and the adverse [action]."
*Roberts*, 998 F.3d at 122 (internal quotation marks omitted). When
a plaintiff produces evidence of these elements, "the burden shifts
to the employer to show that it took adverse action for a
legitimate non-retaliatory reason." *Id.* "If the employer makes
this showing, the burden shifts back to the plaintiff to rebut the
employer's evidence by demonstrating the employer's purported non-
retaliatory reasons were pretext for discrimination." *Id.*

Prudent argues that Plaintiff has not provided sufficient
evidence to satisfy any of the *prima facie* elements. First, it
argues that Plaintiff has not shown that she engaged in protected

7

activity relevant to her claim because she never produced her EEOC charge in discovery.  Prudent argues that Plaintiff may have failed to produce the EEOC charge because the charge contains information that would "refute her claim"—for instance, the charge may have been filed after her employment with Prudent ended, or the charge may allege discrimination based on national origin instead of race. (ECF Nos. 24, at 5-6; 30, at 4-5).  Plaintiff does not explain why she failed to produce her EEOC documents.  Second, Prudent argues that Plaintiff has not shown that an adverse action occurred because it asserts that it never fired Plaintiff.  (ECF Nos. 24, at 6-7; 24-2, at 2-3).  Rather, she abandoned the job over a disputed shift change.  (ECF No. 24-2, at 2-3).  Plaintiff argues that the texts she exchanged with Dr. Okonofua show that she really was fired.  (ECF No. 29, at 3-4).

The court need not decide, however, whether Plaintiff has produced evidence of the first two *prima facie* elements because she certainly has not produced any evidence of the third element: causation.  That is, even assuming Plaintiff has shown that she filed a relevant timely EEOC charge and that Prudent fired her, she has not shown that Prudent fired her *because of* the EEOC charge.  To prove causation, an employee must make the threshold showing that "the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Roberts*, 998 F.3d at 124.  After all, if "a relevant decisionmaker is unaware of any

prior complaints," then he or she cannot possibly retaliate based on those complaints. *Id.* Thus, an employee cannot prove causation at the *prima facie* stage without "produc[ing] evidence sufficient for a factfinder to conclude that [the employer] was personally aware of" the employee's protected activity. *Id.* at 126.[1]

Applying that rule, the United States Court of Appeals for the Fourth Circuit recently held that a plaintiff-employee failed to produce a *prima facie* claim of retaliation where the decisionmaker who fired the employee produced an affidavit in which he "disclaim[ed] any knowledge" of the protected activity, and "no evidence in the record contradict[ed] his denial." *Roberts*, 998 F.3d at 126. The court reasoned that a plaintiff cannot prove a decisionmaker's knowledge merely by offering "speculative theories about discussions between a decisionmaker and someone with knowledge of the plaintiff's protected activity." *Id.* at 126 (internal quotation marks omitted). Rather, a plaintiff must produce evidence that those with knowledge of the protected activity actually reported it to the decisionmaker. *Id.; see also id.* at 115-16, 124-25 (explaining that the employee communicated

---

[1]  *See also Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* case.").

his complaints to the decisionmaker's wife but produced no evidence that the decisionmaker himself knew about the complaints).

In this case, Plaintiff has not met her burden.  First, Dr. Okonofua submitted an affidavit in which she stated that she did not know about the EEOC charge during Plaintiff's brief employment with Prudent.  (ECF No. 24-2, at 3).  She explained that she lacked any information about Plaintiff's past employment because Plaintiff failed to submit certain hiring paperwork which would have disclosed that information.  (ECF No. 24-3, at 2-3).  Plaintiff purportedly filed an EEOC charge against her *prior* employer—not Prudent.  Without evidence suggesting otherwise, there is no reason to assume that anyone at Prudent would know about EEOC proceedings involving a different company.

Second, "no evidence in the record contradicts [Dr. Okonofua's] denial." *Roberts*, 998 F.3d at 126.  Of course, in her unverified amended complaint, Plaintiff alleged that Dr. Okonofua outright admitted that the firing occurred because Prudent learned about the EEOC proceedings.  (ECF No. 7, at 3).  Plaintiff cannot, however, defeat summary judgment through "the mere allegations . . . of [her] pleading." *Interprofession du Gruyere v. U.S. Dairy Exp. Council*, 61 F.4th 407, 415 (4th Cir. 2023) (internal quotation marks omitted).  What is more, it seems that Plaintiff has now changed her story.  In sworn statements submitted during discovery, Plaintiff no longer asserts that Dr. Okonofua said anything about

the EEOC proceedings.  Instead, she inconsistently claims that Dr. Okonofua said Plaintiff was fired either because Syma Rizvi provided a "bad reference," (ECF No. 24-3, at 26), or because Syma Rizvi said "something that made [Dr. Okonofua] regret hiring" Plaintiff.  (ECF No. 29-1, at 1).

At most, these shifting stories create a dispute about whether Dr. Okonofua spoke with Syma Rizvi about Plaintiff—they do not, however, show that Dr. Rizvi told Dr. Okonofua about the EEOC charge.  Without evidence about what may have been said in that purported conversation, evidence that the two doctors merely *spoke* is insufficient.  If, for instance, that purported discussion merely involved a negative reference about Plaintiff's past work performance, it would not have been unlawful for Dr. Okonofua to fire Plaintiff based on that discussion.  Indeed, Plaintiff cannot prove causation merely by offering "speculative theories about discussions between [Dr. Okonofua] and someone with knowledge of . . . [P]laintiff's protected activity."  *Roberts*, 998 F.3d at 126 (internal quotation marks omitted).  Rather, Plaintiff must produce evidence from which a reasonable factfinder could conclude that *Dr. Okonofua herself* knew about the EEOC charge.  Plaintiff's self-contradicting statements do not provide that evidence.

Plaintiff also argues that her retaliation claim is supported by texts sent to a former co-worker in which Plaintiff complained that she was struggling to find a job because Syma Rizvi was

11

providing "bad references." (ECF Nos. 29, at 2; 24-3, at 2). This evidence is similarly unpersuasive. The texts state only that Ms. Rizvi gave "bad references"—not that she told anyone about the EEOC proceedings. The texts also say nothing about conversations with anyone at Prudent. Thus, they reveal little (if anything) about Dr. Okonofua's knowledge.

Beyond these texts and her own contradictory statements, Plaintiff produced no evidence about Prudent's motives or knowledge surrounding the purported firing. Indeed, Plaintiff apparently chose not to depose Dr. Okonofua, Syma Rizvi, or anyone that worked for either of her prior employers. Based on that scant evidence, a reasonable factfinder could not conclude that Dr. Okonofua knew about Plaintiff's protected activity—much less that she fired Plaintiff because of that activity. *See, e.g.*, *Roberts*, 998 F.3d at 126.[2]

Plaintiff also argues that "the timing" of her purported firing provides evidence of retaliatory intent because the firing occurred about three weeks after she was first hired and about six weeks after she filed her EEOC charge. (ECF No. 29, at 2-3). These timing arguments are unpersuasive.

_____

[2] *See also Johnson v. United Parcel Serv., Inc.*, 839 Fed.App'x 781, 784 (4th Cir. 2021) (holding that an employee cannot prove causation by offering only her "subjective *belief* that the reason [she faced adverse action] . . . was because of her complaints").

To start, the fact that Plaintiff's employment ended a few weeks after it began does not by itself suggest that Dr. Okonofua learned about the EEOC charge during those few weeks.  Plaintiff's offer letter stated that she was hired "on a probationary basis"—that is, her employment was "contingent upon a satisfactory reference check" and could only become "permanent" after 90 days.  (ECF No. 24-3, at 10).  This kind of probationary employment period could have been cut short for any number of non-retaliatory reasons, including—as Plaintiff's own interrogatory response suggests—a bad reference from Syma Rizvi.  (ECF No. 24-3, at 26).  Similarly, Dr. Okonofua stated that Plaintiff was unproductive during her shifts, (ECF No. 24-2, at 2), and Plaintiff admitted that she had been criticized for "goofing around" at work, (ECF No. 24-3, at 28).  Thus, the short length of Plaintiff's employment does not by itself prove that Dr. Okonofua knew anything about the EEOC proceedings.  *See Roberts*, 998 F.3d at 126 (holding that the "mere curious timing" of a firing generally does not by itself prove that an employer knew about protected activity) (internal quotation marks omitted).

Nor has Plaintiff proven causation by showing that her employment ended about six weeks after she purportedly filed the EEOC charge.  To be sure, the Fourth Circuit has held that, under certain circumstances, an employee may prove causation by "establish[ing] that the adverse act bears sufficient temporal

proximity to the protected activity." *Roberts*, 998 F.3d at 123 (internal quotation omitted). Without "other evidence of a causal relationship," however, "temporal proximity alone" may support an inference of retaliation only where the adverse action "closely follow[s]" the protected activity. *Id.* at 127 (internal quotation marks omitted).[3] For instance, an inference of retaliation based on bare temporal evidence is appropriate where the adverse action occurs nine days after the protected activity. *Strothers v. City of Laurel*, 895 F.3d 317, 337 (4th Cir. 2018). By contrast, "a lapse of two months" is by itself insufficient. *Roberts*, 998 F.3d at 127 (internal quotation marks omitted).

What is more, where—as here—an employee lacks "concrete, nonspeculative evidence" that the employer knew about the protected activity, it is especially difficult to prove causation through temporal evidence alone. *See Roberts*, 998 F.3d at 126-127. In this case, the six-week period between Plaintiff's purported EEOC charge and her purported firing does not by itself suggest that Prudent fired Plaintiff based on the EEOC charge—especially because Plaintiff cannot prove that Prudent even knew about the charge to begin with.

---

[3] *See also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that "[t]he cases that accept mere temporal proximity" as proof of causation "uniformly hold that the temporal proximity must be very close") (internal quotation marks omitted) (collecting cases).

**IV.   Conclusion**

For  the  foregoing  reasons,  Prudent's  motion  for  summary
judgment will be granted.  A separate order will follow.


/s/
_____
DEBORAH K. CHASANOW
United States District Judge
